# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 08 C 4710 | **DATE** | 3/5/2010 |
| **CASE TITLE** | Teresa Rodriguez vs. City of Chicago | | |

**DOCKET ENTRY TEXT**

For the reasons explained below, the court recommends that Plaintiff's Petition for Attorney's Fees [Doc. 142] be granted in part to the extent that the City should be required to pay Plaintiff's attorney's fees in the amount described below.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) and 28 U.S.C. § 1927, Plaintiff Teresa Rodriguez seeks attorney's fees incurred in connection with her motion to compel compliance with a subpoena she issued to the City of Chicago's Office of Inspector General ("IGO"). Plaintiff's petition for attorney's fees was referred to this court for a report and recommendation. Plaintiff's petition should be granted in part.

On July 30, 2009, Plaintiff moved to compel compliance with a subpoena directed to the IGO. The IGO objected to producing documents pursuant to the subpoena on grounds of relevancy and the law enforcement investigative privilege, among other privileges. On December 9, 2009, this court ordered the IGO to produce its investigatory file regarding El Valor on an attorneys' eyes only basis with the exception that the IGO's preliminary thoughts about or assessments of the investigation could be withheld. (Minute Order of 12/08/09, Doc. 130). Plaintiff now seeks fees and costs in the amount of $18,455.50.

Plaintiff moves for attorney's fees under Rule 37(a)(5)(A). Rule 37(a)(5)(A) provides that if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Contrary to the analysis provided by the parties in their memoranda, the Court believes Rule 37(a)(5)(C) governs the situation here where the court partially granted Plaintiff's motion to compel and authorized an attorneys' eyes only protective order. When a motion to compel is granted in part and denied in part, Rule 37(a)(5)(C) provides that "the court may issue any protective order authorized under Rule 26(c), and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." "In determining a reasonable apportionment of fees, the court will look to the relative degree of success of the party seeking fees." McGrath v. Everest National Ins. Co., 2008 WL 4261075, at *1 (N.D. Ind. Sept. 11, 2008). "However, the degree of success in the motion to compel is not the sole determinant when proportioning fees. The court also will look to the degree to which the objecting party was justified in refusing greater cooperation." Id.

**STATEMENT**

In light of this court's intimate familiarity with the more than six months of litigation on the IGO file, the court finds that Plaintiff is entitled to recover the reasonable expenses she incurred in filing her motion to compel against the City. The City's nondisclosure based on relevancy grounds was unfounded. The City argues that it was not unreasonable for it to argue that the IGO documents Plaintiff sought were not relevant to her termination from El Valor because Plaintiff did not have contact with the IGO until several months after that termination. The IGO documents Plaintiff sought were clearly within the broad scope of relevancy contemplated by Rule 26. The court overruled the City's objection based on lack of relevance and found that (1) the City's failure to mitigate defense relies directly on El Valor's claim that Rodriguez engaged in misconduct which led to her termination and (2) the information IGO has gathered in its investigation may be relevant to El Valor's contention that Rodriguez was terminated for failing to report payroll irregularities in the Youth Enrichment Program (which involves funding from the City of Chicago and would be within the IGO's jurisdiction). The court further found that the fact that Plaintiff did not have contact with the IGO regarding El Valor until after her termination from El Valor was not fatal to her request for documents. The court noted that even though the IGO investigation regarding El Valor started after Rodriguez was discharged, it was reasonable to assume that the investigation looked into alleged fraudulent activity occurring prior to the time of Rodriguez's termination. Given that the City affirmatively raised the failure to mitigate defense based on Plaintiff's termination from El Valor for allegedly failing to report irregularities in a City funded program and the IGO was investigating El Valor's fiscal practices concerning City programs, the City's relevancy objection was not reasonable.

In addition to objecting to production of IGO's investigatory file regarding El Valor on relevancy grounds, the City objected to production on the basis of the law enforcement investigatory privilege. Given section 2-56-110 of the IGO Ordinance, the IGO was justified in asserting the law enforcement investigatory privilege regarding the El Valor investigatory file. The City gambled, however, on the larger issue of whether its raising of the failure to mitigate affirmative defense opened the door for Plaintiff to discover the IGO documents. The law is clear that the "law enforcement investigatory privilege is not absolute. It can be overridden in appropriate cases by the need for privileged materials." Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1125 (7th Cir. 1997). The court's order recognized that the IGO has a strong interest in preserving the confidentiality of an ongoing investigation but found that the IGO's law enforcement investigative privilege was overcome by Plaintiff's need for the information and the City's concerns could be addressed by an appropriate protective order. Doc. 130 at 5. The court explained: "The City raised the affirmative defense that triggered the IGO and El Valor subpoenas. Rodriguez's subpoenas to the IGO and El Valor were a reasonable response to the City's failure to mitigate defense. The City's affirmative defense opened the door to discovery into the IGO investigatory file regarding El Valor which would otherwise be precluded on relevancy grounds." Id. The City was not reasonable in opposing complete production of the IGO investigatory file regarding El Valor where the City opened the door to the subject and the law enforcement investigatory privilege is a qualified, not absolute, privilege. In the end, this court crafted an equitable compromise, designed to accommodate the IGO's concerns as well as Plaintiff's need for information to respond to a defense raised by the City. Rather than complying with the court's order to produce the IGO documents on an attorneys' eyes only basis, the City then moved to withdraw the portion of its failure to mitigate affirmative defense based on Plaintiff's termination from El Valor.

The City's behavior is exactly the type of conduct Rule 37 is designed to deter. The City gambled that the court would adopt its view of the discovery dispute and later, having lost, decided to waive its affirmative defense. Rule 37 requires litigants to critically consider the strength of their discovery positions. Rickels v. City of South Bend, Ind., 33 F.3d 785, 787 (7th Cir. 1994) (stating "[f]ee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims."). The City made a strategic decision to fully litigate the motion to compel the IGO documents. That was the City's prerogative. Having gambled and lost, the City cannot escape the natural consequences of its deliberate choice. The City's conduct resulted in extensive litigation on a tangentially relevant issue and the unnecessary expenditure of resources for both Plaintiff's counsel and this court. The City lost and must now pay Plaintiff's reasonable fees and costs.

**STATEMENT**

The City has also failed to adequately justify why it could not have voluntarily compromised on the IGO issue or withdrawn its affirmative defense earlier. The City claims that the parties were unable to reach a stipulation resolving the motion to compel in October 2009 because Plaintiff "insisted on omitting language in the stipulation that would allow the City to use evidence at trial for impeachment purposes pursuant to Fed. R. Evid. 608." Plaintiff's language in Paragraph 4 of the draft stipulation belies the City's assertion. Before fully briefing the motion to compel, the City knew that Plaintiff's language in Paragraph 4 of the draft stipulation said: "The City reserves the right to introduce evidence that has been previously disclosed regarding Plaintiff's employment at El Valor but only for purposes of "*impeachment as may be permitted under the Federal Rules of Civil Procedure.*" (Emphasis added). When it sought to withdraw a portion of its affirmative defense regarding Plaintiff's failure to mitigate damages, the City said: "In order to avoid further protracted discovery and a mini-trial on the merits of plaintiff's termination from El Valor, the City hereby moves to withdraw its affirmative defense regarding plaintiff's failure to mitigate to the extent that it is based on her termination by El Valor." (Do. 133 at 3). But the City does not explain why it could not have withdrawn its affirmative defense prior to briefing and ruling on the motion to compel. If the City had truly wanted to avoid protracted discovery and a mini-trial on the merits of Plaintiff's termination from El Valor, it could have–and should have–withdrawn its affirmative defense earlier as that would have avoided more than six months of protracted discovery litigation on the El Valor issue.

Having achieved substantial success on her motion to compel, Plaintiff is entitled to recover the bulk of her attorney's fees for the motion. There is a strong presumption that the lodestar figure–the product of reasonable hours times a reasonable rate–represents a reasonable fee, and the City does not challenge the use of the lodestar method to determine a reasonable fee here. JCW Invs., Inc. v. Novelty, Inc., 482 F.3d 910, 920 (7th Cir. 2007). Plaintiff seeks costs and attorney's fees in the amount of $18,455.50. Plaintiff's counsel spent a total of 80.60 hours in connection with the El Valor issue. Plaintiff's attorney's seek rates of $300.00 per hour for John P. Madden, $185.00 per hour for Ylda Kopka and $150.00 per hour for Dara Friedman. The City does not challenge the hourly rate sought by Plaintiff's attorneys but rather raises three limited challenges to the number of hours sought by Plaintiff's counsel. First, the City faults Plaintiff for the parties inability to reach a voluntary compromise in October 2009 "because plaintiff's counsel would not agree to language that would allow the City to use evidence at trial for impeachment purposes as permitted under the Federal Rules of Evidence." (Doc. 147 at 9). Thus, the City believes Plaintiff should only be awarded fees "incurred from September 4, 2009 to October 13, 2009, which is the time plaintiff's counsel spent after the parties failed to reach a stipulation the first time but before plaintiff rejected the City's offer to waive its affirmative defense and reach a stipulation a second time." (Doc. 147 at 9). The court is unpersuaded by the City's argument because as noted earlier, the language of Plaintiff's draft stipulation contradicts the City's version of events.

Second, the City contends that Plaintiff is not entitled to recover fees for the time period June 16 to July 22, 2009, which is the time her counsel spent drafting subpoenas to the IDES, El Valor, and the City, researching the IGO Ordinance, corresponding with those parties regarding the subpoenas, and Rule 37 conferences with counsel regarding those subpoenas, which amounts to $853.00. Rule 37(a)(5)(C) allows the court to "apportion the reasonable expenses *for the motion.*" These fees are not compensable because this time is not an expense incurred for the motion to compel itself. Next, Plaintiff is not entitled to recover time spent on her motions to compel against the IDES and El Valor, which amounts to $1,700 for the 6.0 hours Ylda Kopka spent and the 0.20 hours John Madden spent on Plaintiff's motion to compel against IDES and El Valor. Similarly, the time spent on court appearances on 8/26, 9/10, 9/15, 10/5, 10/30, and 11/3 should be reduced by 2/3rds to fairly account for the fact that those court appearances were also on plaintiff's motions to compel against the IDES and El Valor. Lastly, 4 hours of attorney time at Mr. Madden's rate shall be added to the attorney's fee award for the review of the City's response to the fee petition and drafting of Plaintiff's reply in support of the fee petition. Catapult Communications Corp. v. Foster, 2009 WL 2707040, at *2 (N.D. Ill. August 25, 2009) (stating "attorneys' fees incurred in bringing fee petitions are recoverable under Rule 37.").

Because the court believes Rule 37 is sufficiently applicable to the circumstances presented here, it is unnecessary to decide whether fees would be appropriate under 28 U.S.C. § 1927.