# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 4710 | **DATE** | 2/29/2012 |
| **CASE TITLE** | Teresa Rodriguez vs. City of Chicago | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion to enforce settlement agreement [#212] is denied. In-court ruling date of 3/1/2012 stricken.

■ [ For further details see text below.]  Docketing to mail notices.

# STATEMENT

Plaintiff Teresa Rodriguez has filed a motion to enforce a purported settlement agreement made on January 6, 2012. For the reasons that follow, the motion [#212] is denied.

Background

On the afternoon of January 6, 2012, Rodriguez and defendant City of Chicago delivered a letter to the court that purported to "confirm [the parties'] report that the parties have reached an agreement to settle this case." (Def.'s Ex. A.) The letter states that the "agreed terms [of the settlement] are as follows: 1) a $99,000.00 lump sum payment in liability damages, *with a stipulated judgment if necessary*; and 2) an agreement to have reasonable attorneys' fees and costs assessed by the district court through a petition." (*Id.* (emphasis added).) The letter is signed by Alexandra C. Relias, Assistant Corporation Counsel for the City of Chicago, and John P. Madden, counsel for Rodriguez.

That morning, counsel had discussed the terms of the settlement agreement on the phone. The parties dispute the terms of the oral agreement that was reached. What is clear, however, is that after the call Madden emailed a letter to Relias setting forth the terms of the parties' agreement in writing. Madden's letter states, in relevant part, "Please allow this letter to confirm the agreement we reached to settle this case. The agreed terms are as follows: 1) *the entry of a stipulated judgment in the amount of $99,000.00 for 'liability damages' under § 2617(a)(1)(A)* [the FMLA]; and 2) an agreement to have reasonable attorneys' fees and costs, allowable under § 2617(a)(3), assessed by the district court through a petition." (Pl.'s Ex. A (emphasis added).) Relias responded in an email, stating, "Your letter accurately reflects our settlement agreement." (Pl.'s Ex. B.)

The parties then exchanged more emails and phone calls regarding the contents of the settlement confirmation letter to be submitted to this court. Madden suggested, via email, that the letter to the court use the same language that he used in his letter to Relias. Relias responded, "[T]he only issue I have with the . . .

language is the reference to the specific FMLA statutes.  As it's a settlement, we don't need to cite the statute for authority to settle for the agreed amounts.  Also, we haven't yet discussed how we are going to describe the liability damages in our agreement: i.e. if we term them as back pay, the City has to deduct payroll taxes, etc. . . . .  Though 2617(a)(1)(A) refers 'to other compensation' it also specifically references back pay – therefore I would like to omit both references to the FMLA statute."  (Pl.'s Ex. C).  Madden and Relias then discussed the letter on the phone.  The parties again dispute the terms of any oral agreement that was reached.  Whatever may have been said, both Relias and Madden subsequently signed the final version of the confirmation letter that was submitted to the court and quoted above.

Analysis

      Rodriguez moves to enforce the settlement agreement purportedly reflected in the first email exchange between Madden and Relias on the morning of January 6.  She argues that both parties agreed to the entry of a stipulated judgment as a condition of settlement.  The City responds, somewhat disingenuously in light of Relias's email confirming that Madden's recitation of the terms of the agreement was "accurate[]," that it never agreed to the entry of a stipulated judgment.  It further argues that the letter that was submitted to the court accurately reflects the terms of the parties' settlement agreement.

      The court applies principles of Illinois contract law in enforcing a settlement agreement.  *Laserage Tech. Corp.* v. *Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992).  Illinois follows the objective theory of intent; therefore the court looks first to the language of the agreement.  *Newkirk* v. *Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008) (citing *Vill. of S. Elgin* v. *Waste Mgmt. of Ill., Inc.*, 810 N.E.2d 658, 670, 348 Ill. App. 3d 929, 284 Ill. Dec. 868 (2004)).  "Consequently, in assessing [the parties'] intent, their 'secret hopes and wishes count for nothing' because the 'status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves.'"  *Laserage*, 972 F.2d at 802 (quoting *Skycom Corp.* v. *Telstar Corp.*, 813 F.2d 810, 814–15 (7th Cir. 1987)).

      The record makes clear that the parties initially agreed upon a settlement agreement that included the entry of a stipulated judgment.  The terms of the parties' initial settlement agreement are reflected in Madden's email to Relias and Relias's written response.

      Subsequently, however, the agreement was modified.  Under Illinois law, "[a] modification of a contract is a change in one or more respects which introduces new elements into the details of the contract and cancels others but leaves the general purpose and effect undisturbed."  *Int'l Bus. Lists, Inc.*, v. *Am. Tel. & Tel. Co.*, 147 F.3d 636, 641 (7th Cir. 1998).  In general, a valid modification of a contract must satisfy all the requirements for a valid original contract, including offer, acceptance, and consideration.  *Schwinder* v. *Austin Bank of Chicago*, 809 N.E.2d 180, 189, 348 Ill. App. 3d 461, 284 Ill. Dec. 58 (2004).  Where a modification of contract has been executed, however, the court will enforce the modification even in the absence of consideration.  *De Fontaine* v. *Passalino*, 584 N.E.2d 933, 940, 222 Ill. App. 3d 1018, 165 Ill. Dec. 499 (1991); *Corrugated Metals, Inc.* v. *Indus. Comm'n of Ill.*, 540 N.E.2d 479, 484, 184 Ill. App. 3d 549, 132 Ill. Dec. 739 (1989); *see also Int'l Bus. Lists*, 147 F.3d at 641 (noting that a modification of contract is valid if the party which did not propose the changes is shown to acquiesce in the modification through a course of conduct consistent with acceptance).

      Neither party disputes that the letter to the court would constitute a modification to the initial settlement agreement.  Both parties signed the letter and represented that it reflects the terms of the settlement agreement.  Therefore the letter to the court, not the email exchanges between Madden and Relias, controls.  Moreover, the contract modification was supported by consideration.  "Any act or promise which is a benefit to one party *or* a detriment to the other is a sufficient consideration to support a contract."  *DeFontaine*, 584 N.E.2d at 939 (emphasis added).  There need not be a benefit to one party *and* a detriment to the other.  *Id.* at 940.  Rodriguez initially agreed to settle the case only upon entry of a stipulated judgment under the FLSA.

**STATEMENT**

She subsequently promised to settle the case even without the entry of a stipulated judgment, so long as the judgment is not necessary. This was consideration for the modified agreement.

Accordingly, the court denies Rodriguez's motion to enforce because the agreement that Rodriguez seeks to enforce is no longer in effect.

Despite the parties' requests, the court will not now decide whether entry of a stipulated judgment is "necessary" to effectuate the terms of the parties' settlement agreement. The City represents that it has tendered a proposed written settlement agreement to plaintiff. (*See* Def.'s Ex. B.) This agreement contains terms and conditions not in the parties' January 6 letter to the court. Significantly, the draft agreement provides that "Rodriguez is the prevailing party as to her remaining FMLA claims for the sole purpose of allowing the court to make an award of attorneys' fees and costs, and . . . Rodriguez's attorneys shall be entitled to file a petition seeking attorneys' fees and costs." (*Id.* ¶ 10.) If the parties enter into a written agreement clearly stating that Rodriguez's attorneys are entitled to attorneys' fees, the court would likely be able to enforce this agreement notwithstanding the absence of a stipulated judgment in Rodriguez's favor. *See* L.R. 54.3 (setting forth the procedures governing attorney's fees and referencing either the "judgment *or settlement agreement* upon which the motion is based" (emphasis added)); *Fulmore* v. *The Home Depot U.S.A., Inc.*, No. 03-0797, 2007 WL 2746882, at *2 (S.D. Ind. Sept. 19, 2007) (Hamilton, J.) (fee award is appropriate where "the court is being called upon to apply and enforce the intentions of the parties, as expressed in their agreements"); *cf. Rexam Inc.* v. *United Steel Workers of Am., AFL-CIO-CLC*, No. 03-2998, 2008 WL 583702, at *5 (D. Minn. Feb. 6, 2008) (refusing to award attorneys' fees under section 42 U.S.C. § 1988 where the settlement agreement expressly provided that the parties had reached "no agreement" regarding attorneys' fees). The attorneys' fees award would be based upon the parties' settlement agreement, obviating an analysis of whether an "actual judgment" has been entered in favor of Rodriguez, which is a requirement for a fee award under the FLSA. *See Franzen* v. *Ellis Corp.*, 543 F.3d 420, 430 (7th Cir. 2008). The court will therefore assess whether the entry of a stipulated judgment is "necessary" when the parties' final settlement agreement is before it.