# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **TERESA RODRIGUEZ, by** | ) | |
| **RICHARD M. FOGEL, TRUSTEE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08 C 4710** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Teresa Rodriguez brought suit against the City of Chicago ("City"), alleging interference with her rights and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*., discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., and discrimination in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. The court granted the City summary judgment on Rodriguez's ADA claim but allowed her case to proceed on the FMLA claims.[1] Shortly before trial was to commence, on January 6, 2012, the parties notified the court that they had reached a settlement on Rodriguez's remaining FMLA claims. The settlement included a $99,000 lump-sum payment and also provided for reasonable attorneys' fees and costs. The parties failed to agree on the amount of attorneys' fees and Rodriguez filed the present petition seeking $270,755.00 in attorneys' fees and $7,011.64 in costs.[2] For the

---

[1] Rodriguez voluntarily dismissed her ERISA claim before the summary judgment briefing. *See* Dkt. 49.

[2] Northern District of Illinois Local Rule 54.3 "requires parties who cannot agree on the amount of fees to file a motion documenting fees, hours, rates, and objection to the fees, hours and rates of the opposing party." *RK Co.* v. *See*, 622 F.3d 846, 854 (7th Cir. 2010); N.D. Ill. L.R. 54.3(e).

reasons set forth herein, Rodriguez's petition for attorneys' fees is granted in part and denied in part. The court awards Rodriguez attorneys' fees in the amount of $217,053.00 and costs and expenses in the amount of $7,011.64, for a total fee award of $224,064.64.

## LEGAL STANDARD

Under the FMLA, the prevailing party shall recover an award of reasonable attorneys' fees and costs. See 29 U.S.C. § 2617(a)(3); *Franzen* v. *Ellis Corp.*, 543 F.3d 420, 430 (7th Cir. 2008). In ascertaining the amount of the award, the court initially determines the lodestar amount. *Hensley* v. *Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Johnson* v. *GDF, Inc.,* 668 F.3d 927, 929–30 (7th Cir. 2012). The court may then adjust the lodestar amount upward or downward depending on a variety of factors, such as the degree of success, the novelty and difficulty of the issues, and awards in similar cases. *Hensley,* 461 U.S. at 430 n.3, 434. Although only disputed matters are discussed in this opinion, the court has reviewed all of the materials submitted by the parties in reaching its conclusions.[3]

## ANALYSIS

## I.    Calculating the Lodestar Amount

To determine the lodestar, the court calculates the number of hours reasonably expended and multiplies that number by a reasonable hourly rate for each moving attorney. *Hensley,* 461 U.S. at 433. "An award of the originally calculated lodestar is presumptively reasonable, and it is the City's burden to convince [the court] that a lower rate is *required*." *Robinson* v. *City*

---

[3] In the settlement agreement, the parties agreed that Rodriguez would be deemed a prevailing party with regard to her FMLA claims to allow the court to award attorneys' fees and costs.

*of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007) (citations omitted). Rodriguez's request is

summarized as follows[4]:

### RODRIGUEZ'S LODESTAR CALCULATION

|  | Hours | Rate | Total |
|---|---|---|---|
| John Madden | 339.7 | $350 | $118,895.00 |
| Ylda Kopka | 330.6 | $250 | $82,650.00 |
| Jacob Shorr | 242.3 | $225 | $54,517.50 |
| Dara Friedman | 51.1 | $225 | $11,497.50 |
| Lindsey Goldberg | 14.0 | $225 | $3,150.00 |
| **Total** | **952.50** |  | **$270,710.00** |

The City contests the reasonableness of Rodriguez's proposed hourly rates and argues

that the proposed lodestar amount is unreasonable because Rodriguez achieved only partial

success on her claims. The City contends that the fee award should be no more than

$194,408.14.

### A.    Reasonableness of Attorney Hourly Rate

Rodriguez bears the initial burden of demonstrating that the requested hourly rates for her

attorneys are "in line with those prevailing in the community." *Pickett* v. *Sheridan Health Care

Ctr.,* 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Blum* v. *Stenson,* 465 U.S. 886, 895 n.11,

104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). If this burden is met, the City then has the burden to

"offer evidence that sets forth 'a good reason why a lower rate is essential.'" *Id.* (quoting *People

Who Care* v. *Rockford Bd. of Educ.,* 90 F.3d 1307, 1313 (7th Cir. 1996)). If Rodriguez fails to

---

[4] The figures for this lodestar calculation are based on revisions submitted by Rodriguez in her
reply in support of her petition for attorneys' fees. *See* Dkt. 233.

satisfy her burden, the court has the authority to determine a reasonable rate. *See Uphoff* v.

*Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999).

To substantiate the reasonableness of her hourly rates, Rodriguez provided affidavits

from her attorneys, John P. Madden and his associates who worked on the case, Ylda M. Kopka,

Jacob B. Shorr, Dara E. Friedman, and Lindsey E. Goldberg. Rodriguez also submitted

affidavits from three practicing attorneys working in Chicago specializing in employment

discrimination, David E. Lee, J. Bryan Wood, and Marshall J. Burt. Rodriguez additionally

provided the court with a summary of eight retainer agreements her attorneys entered into with

other clients with similar employment disputes between March 2011 and October 2012. Relying

on these materials as support, Rodriguez argues for the following hourly rate: $350 for Mr.

Madden; $250 for Ms. Kopka; and $225 for Mr. Shorr, Ms. Friedman, and Ms. Goldberg.[5]

The City first argues that using current market rates for Rodriguez's attorneys would

represent a windfall by allowing them to recover their present billing rates for work performed

over the past six years. The City argues that her attorneys should be compensated based on a

historical hourly rate including interest. The City relies on *Garcia* v. *Oasis Legal Financial*

*Operating Company*, in which Mr. Madden and Ms. Kopka's services were respectively valued

at a $300 hourly rate and a $185 hourly rate. 608 F. Supp. 2d 975, 979–80 (N.D. Ill. 2009).

Furthermore, in March 2010, Magistrate Judge Nolan granted Rodriguez's Petition for

---

[5] Rodriguez also relies on the Laffey Matrix rates, guidelines used in the U.S. District Court for the District of Columbia in fee-shifting cases, which suggest that a $435 hourly rate (without taking into account the locality pay differential) is appropriate for an attorney with Mr. Madden's experience, and a $240-285 hourly rate is appropriate for the four remaining associates. The Seventh Circuit, however, has not formally adopted the Laffey Matrix, and judges in this district typically consider it as only one factor in determining a reasonable rate. *See Gibson* v. *City of Chicago*, 873 F. Supp. 2d 975, 983–84 (N.D. Ill. 2012).

4

Attorneys' Fees in connection with a motion to compel compliance with a subpoena, calculating a $300 hourly rate for Mr. Madden, a $185 hourly rate for Ms. Kopka, and a $150 hourly rate for Ms. Friedman.

Rodriguez argues, however, that the court should use the current market rate. Rodriguez notes that this case took six years to reach a resolution and awarding a historical rate would penalize her attorneys because it does not compensate them for the delay in reaching a settlement. In determining how to best compensate an attorney for the delay associated with collecting a fee award, courts may base the award on current rates or use historical rates while adjusting the fee to reflect its present value. *See Perdue* v. *Kenny A ex. rel. Winn*, 559 U.S. 542, 556, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010); *Missouri* v. *Jenkins by Agyei*, 491 U.S. 274, 282–84, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989). The Seventh Circuit has approved of both approaches. *See Smith* v. *Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994); although using the current market rate seems preferred. *Lightfoot* v. *Walker*, 826 F.2d 516, 523 (7th Cir. 1987) ("To compensate for the delay in payment and to simplify its calculation, courts often calculate fee awards using current market rates as opposed to historic rates."); *see also Skelton* v. *Gen. Motors Corp.*, 860 F.2d 250, 255 n.5 (7th Cir. 1988) ("The courts in this circuit generally use current rates."). *But see Shott* v. *Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 745 (7th Cir. 2003) ("[T]he historical-rate-plus-interest method is probably the most accurate and straightforward."); *Matter of Continental Ill. Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (same).

There is no indication that the delay in resolving this case was the fault of Rodriguez. *See In re Milwaukee Cheese Wis., Inc.*, 112 F.3d 845, 849 (7th Cir. 1997) ("Gratuitous delay by

the party seeking the award-delay that injures the other side by forcing it to act as an

uncompensated trustee or investment manager-might be a reason to limit an award of interest.").

Nor did the City offer any means of calculating an appropriate interest rate that would reflect the

present day value of the legal services rendered by Rodriguez's attorneys, which in some

instances can actually be *higher* than an attorney's current market rate. *See Lightfoot*, 826 F.2d

at 523; *Dupuy* v. *McEwen*, 648 F. Supp. 2d 1007, 1017–18 (N.D. Ill. 2009); *Quinones* v. *City of

Evanston*, No. 91 C 3291, 1995 WL 656690, at *6 (N.D. Ill. Nov. 6, 1995). The rates that

Rodriguez's attorneys previously received in this case and in *Garcia* do not adequately

compensate them for the delay in receiving fees for their work on the case. Using the current

market rates for Rodriguez's attorneys is the simpler of the two approaches, *see Jones* v. *R.R.

Donnelley & Sons*, No. 96 C 7717, 2005 WL 14923, at *4 (N.D. Ill. Jan. 3, 2005), and also fairly

compensates her attorneys for the time spent litigating the case over the past six years. *See

Duran* v. *Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *16 (N.D. Ill. Apr. 16, 2012);

*Holstrom* v. *Metro. Life Ins., Co.*, No. 07 C 6044, 2011 WL 2149353, at *7 n.8 (N.D. Ill.

May 31, 2011).

The City next argues that Rodriguez failed to substantiate her attorneys' current hourly

rates. To establish the reasonableness of Mr. Madden's hourly rate, Rodriguez submitted his

affidavit, affidavits from three other practicing attorneys, and representative client contracts. In

his affidavit, Mr. Madden states that his current billing rate is $350. The third party attorney

affidavits all stated that Mr. Madden's hourly rate was reasonable. Those affidavits further

elucidated on the hourly rates charged by those attorneys. Mr. Lee, an attorney with

approximately 35 years of experience, charges $525 an hour; Mr. Wood, an attorney with

6

approximately 13 years of experience charges $350 an hour; and Mr. Burton, an attorney with
approximately 25 years of experience, charges between $275 and $350 and stated that his fee is
$350 for cases filed in federal court where no contingency agreement is in place. Last,
Rodriguez submitted eight retainer agreements with other clients from 2011 to 2012. In seven of
those agreements, Mr. Madden charged an hourly rate of $350 while in the most recent
agreement from October 2012, Mr. Madden's hourly rate was $375.

The City argues that this evidence is insufficient to substantiate an hourly rate of $350 for
Mr. Madden. With regard to the affidavits submitted by third party attorneys, the City notes that
Mr. Lee was the only attorney who provided an hourly rate based on current engagements for
similar work and Mr. Lee had 20 more years of experience than Mr. Madden. While Mr. Lee
has been practicing longer than Mr. Madden, the former's hourly rate is also approximately $175
higher. Mr. Wood, who approximately has the same amount of experience as Mr. Madden,
charges $350 an hour. Mr. Burton, who has ten additional years of experience than Mr. Madden,
also charges $350 an hour for matters in federal court. Indeed, Mr. Wood's hourly rate has
increased from $300 in 2009 to $350 at present, a rate of increase that is consistent with Mr.
Madden's request for an increase in his hourly rate to $350. These attorneys also all stated than
an hourly rate of $350 for Mr. Madden was reasonable; however, their opinions on Mr.
Madden's reasonable hourly rate are not as persuasive. *See Batt* v. *Micro Warehouse, Inc.*, 241
F.3d 891, 895 (7th Cir. 2001). Mr. Madden also submitted his own affidavit stating that his
hourly rate was $350 and, while the City contests that this affidavit is self-serving, Rodriguez
additionally provided representative retainer agreements from the past two years corroborating
that Mr. Madden's hourly rate is $350. *See Denius* v. *Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)

("The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate.") (internal quotation marks omitted); *People who Care*, 90 F.3d at 1312 ("The goal is to determine what the attorney *could have made* if he were not representing this plaintiff in this case.") (internal quotation marks omitted). Accordingly, Rodriguez has satisfied her burden demonstrating that Mr. Madden is entitled to an hourly rate of $350 for work performed on this case, which the City failed to rebut.[6]

The City further contests the hourly rate for the four associates who worked on this case during the litigation. The City contends that Rodriguez seeks the same or substantially similar rates for attorneys who had recently graduated from law school and those with three to four years of experience. The City argues that these attorneys had different levels of experience when they worked on the case and that their market rate should reflect the level of experience that they had at that time. Specifically, Ms. Kopka was admitted to practice in 2005 and worked on this case from 2007 to 2009. Ms. Friedman was admitted to practice in 2008 and worked on this matter from 2009 to 2010. Neither attorney still works at Mr. Madden's firm, O'Malley and Madden P.C. Mr. Shorr was admitted to practice in 2009 and has worked at Mr. Madden's firm since that time. Ms. Goldberg was admitted to practice in 2009 and joined Mr. Madden's firm in 2011. Rodriguez requests an hourly rate of $250 for Ms. Kopka and a $225 hourly rate for Ms. Friedman, Mr. Shorr, and Ms. Goldberg.

Rodriguez relies on affidavits submitted by these attorneys, the third party attorney affidavits, and the retainer agreements. Ms. Kopka and Ms. Friedman's affidavits detail their

---

[6] In the Local Rule 54.3(e) Joint Statement, the City did not contest an hourly rate of $350 for Mr. Madden after March 2010.

skill level but do not indicate their current hourly rate as they no longer practice at Mr. Madden's firm. Mr. Shorr and Ms. Goldberg state that their hourly rates are $225. The third party affidavits all detail that an hourly rate of $225 to $250 for attorneys of similar skill level was reasonable; however, the affidavits lack details such as whether these attorneys have associates who bill at similar rates.

Moreover, the retainer agreements provide that Mr. Madden's associate hourly rates over the past two years ranged from $200 to $225. A rate of $250 for Ms. Kopka's exceeds amounts provided in the retainer agreements for associate work. As the retainer agreements detail that a rate of $225 was at the high end of the spectrum for associate work performed, that rate fairly reflects Ms. Kopka's work on the case as she had the most experience of all the associates who worked on this case. With respect to the other associates who worked on the case, considering that they did not have the years of experience of Ms. Kopka, an hourly rate of $200 reasonably compensates their time performed on the case.[7] These rates are in line with what Mr. Madden has charged as an hourly rate as detailed by the retainer agreements. Indeed, because Rodriguez failed to carry her burden establishing the hourly rates for the associate attorneys, the court concludes that an hourly rate of $225 for Ms. Kopka and a rate of $200 for Mr. Shorr, Ms. Friedman, and Ms. Goldberg is reasonable. *See Uphoff*, 176 F.3d at 409 (court did not abuse its discretion in reducing hourly rate in light of the plaintiffs' failure to sustain their burden of substantiating that hourly rate).

---

[7] Rodriguez also submitted an order and decision from the State of Illinois Human Rights Commission awarding fees based on a $225 hourly rate for Ms. Goldberg. This finding, however, is not conclusive evidence that Ms. Goldberg and the other associates' hourly rate is $225 considering that the retainer agreements state that associates at Mr. Madden's firm also bill at a rate of $200 an hour. *See Pickett*, 664 F.3d at 646 ("A district court is entitled to determine the probative value of each [evidentiary] submission.") (internal quotation marks omitted).

### B. Reasonableness of the Number of Hours Expended

The City argues that Rodriguez seeks fees for several tasks that were needless and unsuccessful. Specifically, the City requests the court deny any fees related to (1) Rodriguez's motion to strike the City's reply to the plaintiff's statement of additional material facts during the summary judgment briefing; (2) Rodriguez's motion to enforce the settlement agreement and subsequent research for a motion to reconsider that was never filed; and (3) time spent in preparing the present fee petition.[8]

What qualifies as a "reasonable" use of a lawyer's time "is a highly contextual and fact-specific enterprise," and as such, the court has "wide latitude" in awarding attorney's fees. *Sottoriva* v. *Claps,* 617 F.3d 971, 975 (7th Cir. 2010) (internal quotation marks omitted). The court considers whether hours are "excessive, redundant, or otherwise unnecessary" and may reduce the lodestar calculation, for example, for hours spent on unrelated and unsuccessful claims, hours attorneys would not bill to their clients, and hours for which the prevailing party has failed to provide adequate support. *Hensley,* 461 U.S. at 433–34. Because of its familiarity with the litigation, the court is in the best position to determine the number of hours reasonably expended in the litigation. *See McNabola* v. *Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993).

### 1. Rodriguez's Motion to Strike

---

[8] In their Local Rule 54.3(e) Joint Statement, the City objected to time spent in connection with briefing filed by Rodriguez that it described as unsuccessful. Included in the City's list of unsuccessful briefing were (1) Rodriguez's Response to the City's Motion to Subpoena Medical Records, Depose Rodriguez's Treaters and for Additional Time to Depose Rodriguez; and (2) Rodriguez's Response to the City's Motion for Leave to Subpoena Plaintiff's Medical Records and Subpoena Rodriguez's Treaters for Deposition. In its response to Rodriguez's fee petition, however, the City did not contest Rodriguez's request for her attorneys' time spent on these two motions. Accordingly, the court will include that time in computing the lodestar amount.

The City claims Rodriguez's Motion to Strike Defendant's Reply to Plaintiff's Statement of Additional Facts was unnecessary and is disfavored according to this court's standing order. Rodriguez argues that the motion to strike was necessary to respond to improper objections raised by the City in its reply in support of its motion for summary judgment. In the summary judgment briefing, the City initially filed a motion to strike Rodriguez's statements of facts for not complying with Local Rule 56.1. In turn, Rodriguez then filed a motion to strike the City's reply to her statement of additional material facts, also arguing that the City failed to comply with Local Rule 56.1. Rodriguez also moved to strike the City's affidavit of a witness whom it had not previously disclosed under Federal Rule of Civil Procedure 26.

The court noted in its summary judgment opinion that the majority of both parties' objections were without merit and neither side fully complied with Local Rule 56.1 As is its customary practice when presented with summary judgment briefing that does not track the local rules, the court only considered properly presented evidence when ruling on the motion for summary judgment. The court was aware of the shortcomings in both sides presentment of the statement of facts and, accordingly, only considered material properly presented in accord with Local Rule 56.1. Rodriguez's motion to strike was not necessary to the disposition of the summary judgment briefing. Accordingly, Rodriguez is not entitled to fees in connection with filing this motion to strike as it was ultimately unnecessary to the court's resolution of the summary judgment briefing. *See*, *e.g.*, *Stark* v. *PPM Am.*, *Inc.*, 354 F.3d 666, 674 (7th Cir. 2004) ("Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary."). The court will reduce 1.5 hours from Mr. Madden's time and 8.2 hours from Mr. Shorr's time expended on the motion to strike.

### 2.     Rodriguez's Motion to Enforce the Settlement Agreement

The City next contends that the time spent by Rodriguez's counsel on the motion to enforce the settlement agreement was unnecessary and wasteful because there was no dispute that the City would pay Rodriguez's attorneys' fees. That the motion was denied, argues the City, warrants excluding time spent on the motion by Rodriguez's attorneys in computing their fee award. Rodriguez argues that the purpose of the motion to enforce the settlement was to clarify that the parties originally conditioned the settlement on the entry of a stipulated judgment so that the court could subsequently entertain a fee petition and award attorneys' fees. The court ruled, however, that although the parties initially may have contemplated the entry of a stipulated judgment, their subsequent modification of the agreement rendered the stipulation optional. The court further noted that the parties could include language regarding attorneys' fees in their settlement agreement, which would permit the court to enforce an agreement providing for attorneys' fees to Rodriguez. While the order provided clarity to the parties regarding language to include in their settlement agreement, filing a motion was unnecessary to achieve this result as less expensive alternatives were available. In a similar vein, time spent on a contemplated motion to reconsider a ruling denying a motion that was unnecessary in the first place is not compensable. *See Hensley*, 461 U.S. at 434. Accordingly, Rodriguez may not obtain fees for the time spent by her attorneys in connection with the motion to enforce the settlement agreement. The court will thus deduct 24.8 hours from Mr. Madden's time[9], 2 hours from Ms. Goldberg's time, and .40 hours from Mr. Shorr's time.

---

[9] The court excluded Mr. Madden's time from February 13, 2012 as it was not related to the motion to enforce the settlement agreement.

### 3. Rodriguez's Request for Fees for Time Spent on her Reply in Support of the Fee Petition

Rodriguez additionally seeks compensation for the time spent by her attorneys preparing their reply to the City's response opposing her fee petition. A plaintiff may recover time spent preparing a fee petition if reasonable. *See Ustrak* v. *Fairman*, 851 F.2d 983, 988 (7th Cir.1988). In determining the reasonableness of time spent preparing a fee petition, courts consider "the comparison between the hours spent on the merits and the hours spent on the fee petitions." *Spegon* v. *Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). The court may reduce the recoverable time spent preparing the fee petition if it is disproportionate to the time spent litigating the case. *See Gibson*, 873 F. Supp. 2d at 992.

Rodriguez obtained leave to file a reply arguing that the City had taken contrary positions in its response and its objections to her initial fee petition and that the City raised new arguments in its response not previously presented in its objections. Namely, Rodriguez argues that the City raised for the first time that she had not provided billing records detailing what her attorneys charged other clients. In addition, the City, argues Rodriguez, challenged Mr. Madden's hourly rate after agreeing that his rate should be $350 for the period of time after March 2010. The City additionally provided that Rodriguez's attorneys should be compensated at a historical rate instead of the current market rate. Last, Rodriguez argues that the City again for the first time requested a 30 percent reduction of the lodestar amount based on the fact that the ultimate settlement amount was conservative and the case presented limited public value, warranting a blanket reduction.

Rodriguez states that Mr. Shorr spent 18.5 hours reviewing the City's response, updating and supplementing legal research, preparing supplemental exhibits, and drafting the Reply in

13

Support of Petition for Attorneys' Fees.  Additionally, Rodriguez provides that Mr. Madden

spent 6.7 hours on the reply, resulting in 25.2 hours spent by her attorneys on the response.

Rodriguez's attorneys spent 924 hours on the merits of the case; in comparison, the amount of

time spent on the reply in support of her fee petition was less than 3 percent of the total hours

expended litigating the case.  Still, as detailed in her fee petition, Rodriguez's attorneys billed for

31.5 hours in connection with drafting the initial fee petition (8.5 hours for Mr. Madden, 20.5 for

Mr. Shorr, and 2.5 hours for Ms. Goldberg).[10]  Most of the material necessary to draft the reply

was already in the possession of Rodriguez's attorneys; spending almost an equivalent amount of

time on the reply as the initial fee petition is excessive.  *See, e.g.*, *Sughayyer* v. *City of Chicago*,

No. 09 C 4350, 2012 WL 2359065, at *7 (N.D. Ill. June 20, 2012) (reducing hours spent on a fee

petition deemed excessive).  Accordingly, the court reduces Mr. Shorr's compensable time in

connection with drafting the reply to 12 hours and Mr. Madden's time to 4 hours.

### C.    Total Revised Lodestar Calculation

Based on the foregoing, the court's revised lodestar calculation is as follows:

|  | Hours Requested | Revised Hours | Rate Requested | Revised Rate | Total |
|---|---|---|---|---|---|
| John Madden | 339.7 | 310.7 | $350.00 | $350.00 | $108,745.00 |
| Ylda Kopka | 330.6 | 330.6 | $250.00 | $225.00 | $74,385.00 |
| Jacob Shorr | 242.3 | 227.2 | $225.00 | $200.00 | $45,440.00 |
| Dara Friedman | 51.1 | 51.1 | $225.00 | $200.00 | $10,200.00 |

---

[10]   This hourly figure is a rough estimate as Rodriguez's attorneys did not detail the specific number of hours spent solely drafting the fee petition.

| | Hours Requested | *Revised Hours* | Rate Requested | *Revised Rate* | Total |
|---|---|---|---|---|---|
| Lindsey Goldberg | 14.0 | 12.0 | $225.00 | $200.00 | $2,400.00 |
| **Total** | **977.7** | **931.6** | | | **$241,170.00** |

## II.     Adjustment to the Lodestar Amount

After calculating the lodestar amount, the court must determine whether that amount should be adjusted upward or downward. *See Hensley,* 461 U.S. at 430 n. 3.[11]  "When a plaintiff has obtained an excellent result, [her] attorney should recover a fully compensable fee (*i.e.*, the modified lodestar amount), and the fee 'should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'" *Spegon*, 175 F.3d at 557 (quoting *Hensley*, 461 U.S. 435).  When a plaintiff, however, only achieves a partial or limited success, the court has the discretion to reduce the lodestar amount to reflect an accurate degree of the plaintiff's success. *Id*. at 557–58.  The City argues that Rodriguez only obtained a limited or partial success and requests that the court lower the lodestar amount.

To determine the degree of Rodriguez's success, the City requests that the court use the three part test espoused by Justice O'Connor in her concurring opinion in *Farrar* v. *Hobby*, which considers (1) the difference between the judgment recovered and the recovery sought; (2) the significance of legal issues on which the plaintiff prevailed; and (3) the public purpose

---

[11]  The factors guiding this analysis include "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3.  "[T]he most critical factor is the degree of success obtained." *Id*. at 436.

served by the litigation. *Farrar* v. *Hobby*, 506 U.S. 103, 121–22, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (O'Connor, J., concurring). Courts employ the *Farrar* test instead of the lodestar method when the damages recovered are nominal or minimal in relation to what was sought. *See Cole* v. *Wodziak*, 169 F.3d 486, 487–88 (7th Cir. 1999); *Simpson* v. *Sheahan*, 104 F.3d 998, 1001 (7th Cir. 1997). Here, the $99,000 settlement payment was neither nominal nor was it minimal considering that Rodriguez recovered half of what she estimated that her claims were potentially worth if the case proceeded to trial. Still, the *Farrar* test is useful in determining whether to reduce a lodestar amount as it provides steps in gauging the degree of success a plaintiff has obtained. *See Connolly* v. *Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999); *Ratliff* v. *City of Chicago*, No. 10 C 739, 2013 WL 3418070, at *2 (N.D. Ill. July 8, 2013)

The City argues that the total lodestar value should be decreased by 30 percent because (1) the court's summary judgment ruling disposed of the ADA claim extinguishing one third of Rodriguez's case; (2) her success was limited in that she only recovered a settlement in the amount of $99,000.

16

### A.    The Court's Summary Judgment Ruling on the ADA Claim

The City first argues that Rodriguez is not entitled to the full lodestar amount because the court disposed of her ADA claim on summary judgment. Rodriguez argues that her ADA claim intertwined her with her FMLA claims in that she supported the allegations of all three claims with the same evidence. Rodriguez further states that she removed the time entries for fees related to her ADA claims and the only entries related to her ADA claim that remain are those that could not be further separated.

In her amended complaint, Rodriguez alleged in two counts that the City interfered with her rights and discriminated and retaliated against her in violation of the FMLA. In a separate count, Rodriguez also alleged that the City violated the ADA by discriminating against her because of her illness. The court denied the City's motion for summary judgment with respect to the FMLA claims. The court found that questions of fact existed regarding the effect that Rodriguez's decision to take FMLA leave had on the City's decision to terminate her employment. The court noted that the evidence was equivocal regarding the decision to terminate Rodriguez; the City argued that her termination was performance-based but Rodriguez cited deposition testimony from the City citing Rodriguez's frequent absences from work as the impetus for her firing. These inconsistencies, combined with the fact that the City terminated Rodriguez immediately after she returned from FMLA leave, precluded summary judgment on those claims. The court, moreover, determined that the ADA claim could not survive summary judgment. Rodriguez based her ADA claim on the City's alleged misperceived notion that her illness precluded her from performing her job. The court, however, found that Rodriguez failed to substantiate this theory and granted summary judgment with respect to the ADA claim.

17

In determining whether to allow a party to recover fees in connection with claims on which no recovery was had, the court should consider whether the unsuccessful claims were related to the successful claims and whether the plaintiff achieved a level of success making it appropriate to award fees in connection with unsuccessful claims. *See City of Riverside* v. *Rivera*, 477 U.S. 561, 568–69, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1989). While different legal theories, the facts substantiating Rodriguez's FMLA claims and her ADA claim were the same. *See Hensley*, 461 U.S. at 435. If the case had proceeded to trial, the facts underpinning the ADA claim would have been presented to the jury in support of recovery premised on the FMLA claims. At summary judgment, the court was able to determine that those facts did not warrant relief under the ADA, but questions remained about their viability under the FMLA.

Reducing the award by a third premised on the dismissal of the ADA claim is not warranted considering those facts substantiated Rodriguez's theory of relief under her FMLA claims. Indeed, failure to recover on every claim does not mean that the litigation as a whole was a failure. *See Hensley*, 461 U.S. at 435 n.11 (rejecting a "mathematical approach comparing the total number of issues in the case with those actually prevailed upon"). Moreover, if time spent on an unsuccessful claim was a factor in the success of other claims, the hours expended on interrelated claims are not unreasonable. Accordingly, the dismissal of Rodriguez's ADA claim on summary judgment does not warrant reducing the fee award by a percentage based on a ratio measuring dismissed to surviving counts after summary judgment.

**B.     The Parties' Settlement Agreement**

The City argues that the court should reduce Rodriguez's fees because the relief obtained was far from excellent or substantial in that she ultimately settled the case for less than she

initially sought.  In making a reduction based on limited success, the court should not lower the fee request solely based on the difference between the relief Rodriguez recovered and the relief she originally sought.  *See Connolly,* 177 F.3d at 597.  In the settlement agreement, Rodriguez received a $99,000.00 payment exclusive of reasonable attorneys' fees and costs, which were two of the primary bases of her requested relief.  The settlement award is not an insignificant amount, being approximately half of what she estimated a jury might reward.  *Cf. Anderson* v. *AB Painting & Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009) ("If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing.").

The City last argues that Rodriguez's FMLA claims proceeding past summary judgment was not a victory, and the resulting settlement does not constitute an excellent result warranting recovery of all her fees.  Rodriguez contends that the court's denial of summary judgment on the FMLA claims and the parties' ensuing settlement on the eve of trial provided the requisite level of success to award all fees.  While providing monetary relief for Rodriguez, the settlement agreement did not provide the full relief requested in Rodriguez's amended complaint and is best viewed as a partial success.[12]  *See Lathan* v. *Derwinski*, No. 89 C 663, 1991 WL 148148, at *3 (N.D. Ill. July 18, 1991) ("A settlement agreement may not directly answer each and every allegation in a complaint . . . The settlement here is more properly characterized as a partial success."); *Lindstrom* v. *Levy*, No. 86 C 7554, 1987 WL 13434, at *2 (N.D. Ill. June 30, 1987).

---

[12] Rodriguez also argues that the court's denying summary judgment with regard to the City's after acquired evidence affirmative defense militates in favor of awarding all of her fees.  The court's summary judgment ruling did not dispose of the defense entirely.  Rather, the court deemed it a question for the jury.  The court's ruling regarding the affirmative defense thus provides little support for Rodriguez's argument that she obtained an excellent result.

Rodriguez's lawsuit served an important public purpose in that she alleged that the City violated her FMLA rights. Federal law protects employees who take leave based on illness from retaliation. That Rodriguez recovered damages from a public entity based on these allegations underscores the important public purpose that this case served. Still, Rodriguez's recovery was individual as she only sought and obtained money damages for herself. *Cf. Hatcher* v. *Consolidated City of Indianapolis*, 126 F. App'x 325, 327 (7th Cir. 2005). Accordingly, the court finds that the parties' settlement of the claims did not constitute the type of success warranting a full award of the lodestar amount. The court finds reducing the revised lodestar amount by 10 percent more accurately represent the partial success obtained by Rodriguez. *Cf. Fine* v. *Ryan Int'l Airlines*, 305 F.3d 746, 757 (7th Cir. 2002) (district court did not abuse its discretion in reducing the lodestar by ten percent despite the fact that the plaintiff received all of the monetary relief she could have recovered). Accordingly, the court awards attorneys' fees in the amount of $217,053.00.

## III.    Costs and Expenses

The parties are in agreement as to the total costs in the amount of $7,011.64, and accordingly, the court will award costs in that amount.

### CONCLUSION AND ORDER

For the foregoing reasons, Rodriguez's petition for attorneys' fees [dkt. 222] is granted in part and denied in part. The court awards Rodriguez attorneys' fees in the amount of

$217,053.00 and costs and expenses in the amount of $7,011.64, for a total fee award of

$224,064.64.

ENTER:

Dated: September 24, 2013

_____

JOAN HUMPHREY LEFKOW
United States District Judge